UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA REYES,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 07-3580 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On June 5, 2007, plaintiff Linda Reyes ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; June 12, 2007 Case Management Order, ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 31, 2000, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 67-68). Plaintiff asserted that she became disabled on March 2, 2000, due to neck pain, bursitis, tendinitis, hypersomnia with sleep apnea, a head bobbing neck problem, depression, and pain in her right ankle and left knee. (AR 68, 96). The Social Security Administration denied plaintiff's application initially and on reconsideration. (AR 50-59, 616). Plaintiff then requested a hearing which was held before an ALJ on November 25, 2003. (AR 60, 920-48). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 920-48).

On December 30, 2003, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 609-15). The Appeals Council remanded the matter to the ALJ for further proceedings. (AR 622-24). The ALJ thereafter conducted a second hearing on April 25, 2006, during which a vocational expert and plaintiff, who appeared with counsel, testified. (AR 949-65).

On June 9, 2006, the ALJ once again determined that plaintiff was not disabled. (AR 15-27). In a lengthy decision, the ALJ found: (1) plaintiff suffered from the following severe impairments: a history of right shoulder surgery, possible fibromyalgia, status post surgeries for heel spurs/plantar fasciitis,

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

degenerative disc disease of the cervical and lumbar spines and depressive disorder, not otherwise specified (AR 26); (2) plaintiff's impairments did not meet or medically equal one of the listed impairments (AR 26); (3) plaintiff retained the residual functional capacity to do a significant range of sedentary work (AR 25, 27);[2] (4) plaintiff could not perform her past relevant work (AR 27); (5) there are a significant number of jobs in the national economy that plaintiff could perform (AR 27); and (6) plaintiff's allegations regarding her limitations were not totally credible. (AR 26).

The Appeals Counsel denied plaintiff's application for review of the June 9, 2006 decision. (AR 8-10).

### III.  APPLICABLE LEGAL STANDARDS

#### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

---

[2] The ALJ determined that plaintiff: (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand/walk 2 hours in an 8-hour workday; (iii) could sit 6 hours in an 8-hour workday; (iv) could occasionally climb, balance, stoop, kneel, crouch, crawl and reach overhead; and (v) had mild limitations in (a) understanding and remembering tasks; (b) sustaining concentration and persistence; (c) socially interacting with the general public; and (d) adapting to workplace changes. (AR 22, 24, 26-27).

|     |     |                                                                                                                                                                 |
| --- | --- | --- |
| (1) | Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two. |
| (2) | Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three. |
| (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. |
| (4) | Does the claimant possess the residual functional capacity to perform her past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five. |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout, 454 F.3d at 1052 (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

4

1  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
2  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
3  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
4  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
5  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
6  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.  DISCUSSION**

**A.  The ALJ Properly Considered the Opinion of Plaintiff's Treating Psychiatrist**

Plaintiff alleges that the ALJ erroneously failed properly to favor the opinion of treating psychiatrist, Dr. Sam Smith, over the opinion of the examining consultative psychologist Dr. Michelle Molina. (Plaintiff's Motion at 4-5).  This Court finds no material error in the ALJ's assessment of the medical opinions pertaining to plaintiff's mental impairments and limitations and finds that the ALJ's assessment of plaintiff's mental residual functional capacity is supported by substantial evidence.

**1.  Relevant Facts**

On January 10, 2002, plaintiff's primary care physician at Universal Care referred plaintiff for a psychiatric evaluation for her depression and prescribed Paxil.  (AR 311).

///

On January 29, 2002, Dr. P.W. Davidson at Memorial Counseling Associates, Inc., completed an "Initial Clinical Assessment." (AR 216-19). Such assessment reflects: Plaintiff had been sent in by her primary care physician for mild depression since the death of plaintiff's mother in April 2001. (AR 219). She had been given a prescription for Paxil but had not taken it. (AR 216). She was not suicidal, had never had a nervous breakdown, and had never seen a psychiatrist before. (AR 216, 219). Plaintiff reported that her mother had been schizophrenic. (AR 216, 219). Although plaintiff's mood was depressed, the examination was essentially normal with no observed disturbances. (AR 216-19). Dr. Davidson recommended that plaintiff take the Paxil as prescribed. (AR 215).

Plaintiff continued to see Dr. Davidson between February 5, 2002 and July 29, 2002. (AR 379-81). She complained of side effects from taking Paxil. (AR 381). Dr. Davidson reassured plaintiff that the side effects would reduce as soon as the therapeutic effects kicked in. (AR 381). Dr. Davidson noted a diagnosis of "309.00" – the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") code for an Adjustment Disorder with Depressed Mood. (AR 381). Plaintiff followed up with Dr. Davidson on March 26, June 19, and July 29, 2002, reporting that she was still depressed, and that she wanted to discontinue the Paxil due to sleepiness. (AR 379-80). Dr. Davidson advised plaintiff to taper off of the Paxil. (AR 379).

On August 30, 2002, plaintiff underwent a Complete Psychiatric Evaluation by Dr. Nathan Lavid, a psychiatrist at the S&L Medical Group. (AR 242-45). Plaintiff reported that she had begun taking an antidepressant medication about six months earlier and was on Prozac. (AR 242-43). Plaintiff stated that the medication was helpful and that she felt "okay." (AR 242). Plaintiff's examination was essentially normal, with no evidence of cognitive deficits, perceptual disturbances or delusional disorders. (AR 243-45). Dr. Lavid diagnosed plaintiff with depressive disorder, not otherwise specified, and assigned

her a Global Assessment Functioning ("GAF") score of 60.[4]  With respect to plaintiff's mental residual functional capacity, Dr. Lavid opined:

> This patient is able to focus attention adequately.  She is able to follow one- and two-part instructions.  This patient can adequately remember and complete simple tasks.  The patient's depression appears to be controlled to the point that she is able to tolerate the stress in inherent in the work environment, maintain regular attendance, and work without supervision.

(AR 245).  Dr. Lavid noted that plaintiff's prognosis was "fair."  (AR 245).

On September 24, 2002, a state agency physician completed a Psychiatric Review Technique form which reflects:   Plaintiff's mental impairment was not severe, causing only a mild restriction of activities of daily living, and mild

---

[4] A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See DSM-IV at 32.  A GAF score from 51-60 denotes moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).  See DSM-IV at 32.

By comparison, in a daily activities questionnaire dated July 28, 2002 – just one month before Dr. Lavid's evaluation – plaintiff's father reported that plaintiff had no problems with social functioning.  (AR 117).  He noted that plaintiff was able to give her children more "moral, spiritual, finincial [sic] and emotional" support than any mother he knew.  (AR 117).  Plaintiff reportedly had no out of the ordinary problems concentrating and remembering for someone over 40, and no problems following instructions and finishing jobs because she was "very detail oriented."  (AR 118).  With respect to her alleged anxiety and depression, plaintiff's father stated:  "Linda has a lot of worries/fears . . . from childhood and later years.  Linda is now taking a medication called Paxil, which she uses for anxiety/depression.  Low self esteem, no husband . . . struggles with daily life seem too much at times.  Linda cries a lot, since mom passed away 4-7-01."  (AR 118).  He added:  "I know that [plaintiff] is able to cope now, but I know that all of this is taking a toll on her life."  (AR 119).

In her daily activities questionnaire of the same date, plaintiff also reported no problems with social functioning.  (AR 123).  She did say that sometimes, when she was writing, she forgot what she was writing about or what she was trying to say.  (AR 124).  She reported no problems with written or verbal instructions "unless there are words (medical, technical) that [she] don't [sic] understand."  (AR 124).

7

difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (AR 261, 271).

From October 4, 2002 through April 2003, Dr. Lee of Memorial Counseling Associates, Inc., treated plaintiff. (AR 375-78). Plaintiff presented to Dr. Lee with complaints of sadness, helplessness, worthlessness, low self-esteem, erratic sleep and intermittent death wishes. (AR 378). Dr. Lee diagnosed plaintiff with "309.00" – the DSM-IV code for an Adjustment Disorder with Depressed Mood, continued her on Prozac, and referred her to group therapy. (AR 378). On November 4, 2002, when plaintiff reported that she was not better, Dr. Lee increased plaintiff's Prozac dosage. (AR 378). When plaintiff returned on December 31, 2002, she reported being increasingly depressed, having crying spells, recurrent nightmares and hearing intermittent "voices." (AR 377). Dr. Lee diagnosed plaintiff with post traumatic stress disorder ("PTSD") and Major Depression (DSM-IV 296.32), and adjusted her medications. (AR 377). He reportedly added Risperdal to plaintiff's medications for the auditory hallucinations. (AR 393, 400). When plaintiff still presented with complaints of depression in January and February 2003, Dr. Lee again adjusted plaintiff's medication. (AR 376). Dr. Lee's last treatment note from April 15, 2003, reflects that the doctor observed that plaintiff was more animated, and smiled occasionally, and that her depression and withdrawal had decreased. (AR 375). Plaintiff reported "doing better" and feeling "less depressed and anxious." (AR 375). Dr. Lee refilled plaintiff's medications and referred her back to her primary care physician for further "med. monitoring". (AR 375).

On June 26, 2003, plaintiff presented to a social worker for an initial psychiatric assessment to the Long Beach Mental Health Center of the Los Angeles County Department of Mental Health. (AR 393-97, 856-60). Plaintiff reported taking Prozac, Risperdal, and Clonazepam. (AR 394, 857). She noted that Dr. Lee had added the Risperdal to her medications due to an auditory

8

hallucination, and that she had not had an auditory hallucination since. (AR 400, 856). Plaintiff reported that she was depressed, had poor concentration, and experienced anxiety and panic, but that she was stable on her medications at the time. (AR 393). The social worker noted, inter alia, that plaintiff's speech, intellectual functioning and memory were unimpaired, though her "Serial 7's" were poor. (AR 396, 859). The social worker also indicated that plaintiff's mood was dysphoric and tearful, her affect was appropriate, she had no perceptual or though process disturbances, but had paranoid delusions about the police. (AR 396, 859). The social worker noted a diagnosis of Major Depression, Severe, with Psychotic Features, and assigned plaintiff a GAF score of 50. (AR 397, 860).[5] Plaintiff's case was opened to social worker Malcolm Dickson. (AR 400). She was scheduled for a medical evaluation with Dr. Mallare on July 7, 2003. (AR 400).

On July 7, 2003, Dr. Mallare diagnosed plaintiff with Major Depression, recurrent, severe, with no psychosis and assigned plaintiff a GAF score of 45.[6] (AR 392, 399). He recommended that she continue on Prozac for the time being to treat her depression, and referred her to a team doctor to determine if she should continue to use her current medications. (AR 399). On July 14, 2003, plaintiff met with social worker Dickson, who noted that plaintiff complained of insomnia, anxiety, fatigue, poor motivation, and low self esteem. (AR 398).

On July 29, 2003, Dr. Randolph B. Shey, performed a neurological evaluation of plaintiff. (AR 401-03). As to plaintiff's mental status, Dr. Shey reported: Plaintiff was alert and oriented to time, place, and person. Calculations, abstractions, and memory testing were normal. She had no left-right confusion, no

---

[5]A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 32.

[6]See supra note 5.

aphasia, agnosia, or apraxia. Her spatial orientation and constructions were intact. (AR 401).

Between August 11, 2003 and April 10, 2006, psychiatrist Dr. Sam Smith, at the Long Beach Mental Health Center of the Los Angeles County Department of Mental Health treated plaintiff. (AR 844-50). Plaintiff initially reported depression, anxiety, panic attacks, paranoia, irritability, instability, poor impulse control, and other symptoms. (AR 847-50). Her reported complaints lessened over time. (AR 843-46). Dr. Smith treated plaintiff by modifying her psychiatric medications. (AR 844-50).

On April 7, 2005, Dr. Smith completed an Evaluation for Mental Disorders for plaintiff. (AR 836-39). Dr. Smith noted: Plaintiff complained of extreme difficulty sleeping, agitation, irritability, paranoia, mood swings, significant anxiety, panic attacks, chronic depression, auditory hallucinations, fatigue, low energy, poor attention, poor concentration, poor ability to focus, poor impulse control that had led to arrests for violence, anger management problems, and difficulty tolerating frustration. (AR 846). She reportedly had lost interest in everything, leaving home only for doctor's appointments. (AR 836). Plaintiff had a dysphoric attitude. Her moods ranged from angry and hostile to depressed and tearful. (AR 837). She reported frequent homicidal thoughts and poor impulse control, as well as feelings of helplessness and worthlessness. (AR 837).

Dr. Smith further reported that plaintiff had poor focus and concentration, and impaired functioning based on a mental status exam dated February 14, 2005. (AR 837).[7] He noted that plaintiff experienced chronic depression as well as paranoia, delusions, and auditory hallucinations. (AR 837). Plaintiff reportedly needed assistance in nearly all activities of daily living and had stopped

---

[7]The referenced February 14, 2005 mental status exam is not a part of the records provided by the Department of Mental Health which cover this time period. (AR 392-400, 842-50). Dr. Smith's progress notes do not reflect that Dr. Smith saw plaintiff on February 14, 2005 and do not reference such a mental status exam. (AR 842-50).

socializing with all of her friends. (AR 838). Plaintiff claimed to miss important appointments due to her memory. (AR 838). Plaintiff was then taking Abilify, Lithium, Dalmane, and Prozac. (AR 839). Dr. Smith diagnosed plaintiff with bipolar disorder not otherwise specified, and gave plaintiff a poor prognosis. (AR 839).[8]

Dr. Michelle Molina, clinical psychologist, evaluated plaintiff on April 1, 2005. (AR 793-98). Dr. Molina reviewed Dr. Lavid's 2002 evaluation and administered multiple psychological tests to plaintiff. (AR 793). Dr. Molina reported that plaintiff complained of, <u>inter alia</u>, bipolar disorder, depression, and being overly emotional, but that plaintiff was vague about her symptoms. (AR 793). Plaintiff was then taking medications including Lithium, Abilify, Prozac and Tegretol. (AR 794). Regarding Plaintiff's mental status examination, Dr. Molina noted:

> The patient put forth poor effort in the evaluation. The patient was able to fill out a lengthy questionnaire, requiring at least eighth or ninth grade education. She is able to take care of her personal hygiene and her children; however, she was unable to complete a very simple exam and scored a 5 on the Rey-15, indicating that she was putting forth very poor effort. The patient was very vague and inconsistent with information about her history and her symptoms. Therefore, it was difficult for this evaluator to evaluate her genuineness. After testing her with the Rey-15, it appears that the patient was putting forth very poor effort as she was able to read or

---

[8]On April 6, 2006, Dr. Smith again completed an Evaluation Form for Mental Disorders for plaintiff. (AR 852-55). While the form is largely duplicative of Dr. Smith's earlier evaluation, Dr. Smith diagnosed plaintiff with schizoaffective disorder, bipolar type, and once again gave plaintiff a poor prognosis. (AR 855). On the form, Dr. Smith referenced a March 14, 2006 mental status exam that is not a part of the record. (AR 853). Again, Dr. Smith's progress notes do not reflect that Dr. Smith saw plaintiff on that date, and do not reference such mental status exam. (AR 842-50).

1     write at an eighth or ninth grade level, yet she was not able to
2     immediately recall letters and numbers presented in a logical
3     sequence.  The patient was also unable to tell me the date of the
4     evaluation, yet she was able to arrive at this appointment today by
5     herself and fill out the RE: questionnaire.  She was able to recall only
6     one of three objects after three minutes.  Her presentation today was
7     not genuine based on this information.
8 (AR 794-95).
9        As to plaintiff's memory, Dr. Molina stated that plaintiff "could recall
10 numerous details regarding her personal history. . . [and] complaints that prevent
11 her from working. . . [She] knew her telephone number and birth date." (AR 795).
12 With respect to plaintiff's concentration, Dr. Molina noted:
13     During the evaluation, the patient had difficulty focusing on tasks.
14     She was very preoccupied with discussing symptomology, yet she
15     continued to be vague about frequency and duration of those
16     symptoms.  The patient needed constant supervision from this
17     evaluator in order to persist at tasks.  The patient could recall five
18     digits forward and four digits backwards.
19 (AR 795).
20        Dr. Molina opined that plaintiff's score on the Folstein Mental Status
21 Examination, Wechsler Adult Intelligence Scale-III, and Weschler Memory Scale-
22 III were all invalid due to lack of effort. (AR 796).  Dr. Molina estimated that
23 plaintiff's intellectually functioning and memory were within the low average
24 range. (AR 796-97).  Dr. Molina diagnosed plaintiff with "depressive disorder,
25 [not otherwise specified], by history." (AR 797).  Based upon plaintiff's test
26 scores, interaction with Dr. Molina, and her background information, Dr. Molina
27 opined that plaintiff had no mental limitations. (AR 797-98).
28 ///

1    At the first hearing, plaintiff testified:  She was "emotionally disturbed and
2 forgetful." (AR 931, 935).  She could not sleep at night due to delusions that
3 someone was after her, and paranoia. (AR 934).  She cried a lot. (AR 935).  She
4 had stopped engaging in any social activities. (AR 938).  She went to Long Beach
5 Mental Health twice a week for therapy, and once every four months to see her
6 doctor. (AR 940-41).
7    At the second hearing, plaintiff testified:  She saw her social worker at
8 Long Beach Mental Health for therapy once every three weeks. (AR 954).  She
9 still suffered from crying spells, forgetfulness, trouble sleeping due to fear, and
10 paranoia, to the same degree as per her prior testimony. (AR 954).  She reported
11 no new mental problems. (AR 955).

    **2. Relevant Law**

13    In Social Security cases, courts employ a hierarchy of deference to medical
14 opinions depending on the nature of the services provided.  Courts distinguish
15 among the opinions of three types of physicians:  those who treat the claimant
16 ("treating physicians") and two categories of "nontreating physicians," namely
17 those who examine but do not treat the claimant ("examining physicians") and
18 those who neither examine nor treat the claimant ("nonexamining physicians").
19 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A
20 treating physician's opinion is entitled to more weight than an examining
21 physician's opinion, and an examining physician's opinion is entitled to more
22 weight than a nonexamining physician's opinion.[9]  See id.  In general, the opinion
23 of a treating physician is entitled to greater weight than that of a non-treating
24 physician because the treating physician "is employed to cure and has a greater
25 opportunity to know and observe the patient as an individual." Morgan v.

---

[9] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

13

Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 3.  Analysis

Plaintiff complains that the ALJ did not provide sufficient reasons for rejecting Dr. Smith's opinion concerning plaintiff's mental limitations, and instead, adopting the contradictory assessment of Dr. Molina. This Court disagrees, and finds that the ALJ offered specific and legitimate reasons supported

by substantial evidence in the record, for favoring examining psychologist Dr. Molina's opinion over that of Dr. Smith.

Here, after summarizing Dr. Smith's and Dr. Molina's assessments (AR 23), the ALJ rejected Dr. Smith's assessment in favor of Dr. Molina's assessment as unsupported by clinical findings and Dr. Smith's own treatment notes, explaining:

> I do not give any weight to the extreme statements regarding the claimant's functioning from Dr. Smith in the questionnaires. There is no evidence that Dr. Smith performed any mental status testing or psychological testing. Dr. Smith's medication notes do not show any mental status testing or psychological testing. He claims that the claimant is essentially unable to function, his questionnaires indicate no improvement whatsoever with treatment and he gives the claimant poor prognosis; however, Dr. Smith's medication notes generally show fair response to medications and do not show missed appointments. It is reasonable to assume that were the claimant as functionally limited and debilitated as Dr. Smith claims in the disability questionnaires, he would have recorded those symptoms and limitations in his treatment records and he would have referred the claimant to another psychiatrist for consultation and a psychologist for mental status and psychological testing in order to determine the appropriate modality of treatment and the efficacy of current treatment. The claimant has never been psychiatrically hospitalized. Further, even with poor effort, the claimant was able to recall numerous details regarding her personal history, her phone number and her birth date as well as recall 5 digits forward and 4 backwards at the psychological consultative examination.

(AR 23-24) (internal citations omitted). These are specific, legitimate reasons for rejecting Dr. Smith's conclusory, unsupported evaluation. See Tommasetti v.

1  Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between questionnaire
2  responses and medical records constitutes specific and legitimate reason to
3  discount treating physician's opinion); Connett v. Barnhart, 340 F.3d 871, 875
4  (9th Cir. 2003) (treating physician's opinion properly rejected where treating
5  physician's treatment notes "provide no basis for the functional restrictions he
6  opined should be imposed on [the claimant]"); Saelee v. Chater, 94 F.3d 520, 522
7  (9th Cir. 1996) (variance between physician's opinion and his own treatment notes
8  may be used to deem opinion untrustworthy), cert. denied, 519 U.S. 1113 (1997).
9  The ALJ properly noted the incongruence between Dr. Smith's own treatment
10 records and plaintiff's treatment history for the period in issue, with the extreme
11 limitations set forth in Dr. Smith's opinion that were not supported by substantial
12 evidence in the record.[10]
13       Other than Dr. Smith's evaluation, the evidence of record supports the
14 conclusion that plaintiff could work.  As summarized above, the ALJ found only
15 mild mental limitations based on Dr. Molina's assessment.  (AR 24).  Dr.
16 Molina's assessment is based on medically-acceptable diagnostic techniques and
17 constitutes substantial evidence to support the ALJ's determination of plaintiff's
18 residual functional capacity.  See 20 C.F.R. § 416.927(d)(3); SSR 96-2p; Orn, 495
19 F.3d at 632; Holohan v. Massanari, 246 F.2d 1195, 1202 (9th Cir. 2001). The
20 vocational expert testified that a person with plaintiff's residual functional
21 capacity, as determined by the ALJ, could work.  (AR 962-63).
22 ///

---

[10]Plaintiff argues that the ALJ erroneously discredited Dr. Smith's opinion based upon the failure to refer plaintiff to another psychiatrist for consultation and further testing. (Plaintiff's Motion at 5). Plaintiff contends that this was not a permissible basis upon which to reject the treating physician's opinion because plaintiff could not afford other treatment. First, this Court finds no error. There is no indication in the record that the treating psychiatrist refrained from recommending a particular course of treatment due to plaintiff's financial situation as opposed to his medical judgment as to what was appropriate. Second, even assuming the ALJ erred in this regard, such error was harmless as the ALJ articulated other specific and legitimate reasons for rejecting the treating psychiatrist's opinion.

1   Accordingly, the Court finds that the ALJ's determination that plaintiff
2 could work, despite her mental impairments, is supported by substantial evidence
3 and is free from material error.

4   **B.     The ALJ Properly Assessed Plaintiff's Credibility**

5   Plaintiff alleges that the ALJ erred in rejecting plaintiff's testimony
6 concerning her alleged limitations without adequate reasons. (Plaintiff's Motion,
7 6-9). For the reasons discussed below, the Court disagrees.

8   An ALJ is not required to believe every allegation of disabling pain or other
9 non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d
10 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically
11 determinable impairment that could reasonably give rise to symptoms assertedly
12 suffered by a claimant, an ALJ must make a finding as to the credibility of the
13 claimant's statements about the symptoms and their functional effect. Robbins,
14 466 F.3d 880 at 883 (citations omitted). Unless an ALJ makes a finding of
15 malingering based on affirmative evidence thereof, the ALJ may reject a
16 claimant's testimony regarding the severity of his symptoms only if the ALJ makes
17 specific findings stating clear and convincing reasons for doing so. Id. (citations
18 omitted). The ALJ's credibility findings "must be sufficiently specific to allow a
19 reviewing court to conclude the ALJ rejected the claimant's testimony on
20 permissible grounds and did not arbitrarily discredit the claimant's testimony."
21 Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ must "specifically
22 identify the testimony [the ALJ] finds not to be credible and must explain what
23 evidence undermines the testimony." Holohan, 246 F.3d at 1208.

24   To find the claimant not credible, an ALJ must rely on (1) reasons unrelated
25 to the subjective testimony (e.g., reputation for dishonesty); (2) internal
26 contradictions in the testimony; or (3) conflicts between the claimant's testimony
27 and the claimant's conduct (e.g., engaging in daily activities inconsistent with the
28 alleged symptoms, maintaining work inconsistent with the alleged symptoms,

failing, without adequate explanation, to take medication, to seek treatment or to follow prescribed course of treatment). Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his or her credibility assessment. Burch, 400 F.3d at 681.

Here, the ALJ stated sufficient reasons for rejecting plaintiff's testimony. The ALJ meticulously summarized plaintiff's subjective complaints both made at the hearing, and as reflected in the various medical records, as he discussed the record evidence of plaintiff's medically-determinable impairments. (AR 16-19, 21-24).[11] Ultimately, the ALJ refused to find greater mental limitations than those he adopted, given Dr. Molina's assessment of plaintiff's poor effort on the psychological testing, the inconsistencies between plaintiff's asserted limitations and her treatment, and plaintiff's daily activities which the ALJ believed were inconsistent with greater limitations. The ALJ reasoned:

> The claimant's subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. There is no evidence of severe disuse muscle atrophy that would be compatible with the claimant's alleged inactivity or inability to function. The claimant's subjective complaints and limitations are not consistent with her treatments. The claimant has not received any

---

[11]Concerning plaintiff's asserted mental limitations, the ALJ summarized the medical evidence and noted:

> The claimant testified that she still suffers from crying spells, forgetfulness, trouble sleeping and being paranoid. She stated that the degree of those impairments is about the same. The claimant denied any new mental impairment since the last hearing.

(AR 16, 22-24).

>ongoing treatment, including physical therapy, epidural injections, treatment with an orthopedic doctor, etc., for her back, hands or knees since the prior hearing. She does not use a neck brace or back brace for her arms, back, etc. She has not received any back, knee, hip, neck or additional shoulder surgery. The claimant has not been psychiatrically hospitalized, and it appears that her treatment consists solely or primarily of medication follow-ups. It is reasonable to assume that if the claimant were experiencing the disabling problems alleged, she would have received more aggressive treatment.
>
>The claimant's poor effort at the psychological consultative evaluation, leading to invalid test profiles, raises a serious credibility concern.
>
>The claimant's activities of daily living are out of proportion to her allegation of total disability. She reported in her March 4, 2005 Disability Activities Questionnaire that she prepares meals 3 times a week, she does dishes, dusting and folds clothes, her means of travel is walking, and public transportation, she is able to go out alone and drive, she grocery shops twice a month and she is able to manage money.

(AR 24-25) (citations omitted). These constitute "clear and convincing reasons" for discounting plaintiff's testimony which are supported by substantial evidence in the record. See, e.g., Lingenfelter, 504 F.3d at 1140; Burch, 400 F.3d at 680-81; SSR 96-7p.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If, as here, the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 23, 2008

                                          /s/
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE